NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PROGRESSIVE AMERICAN INSURANCE )
COMPANY; PROGRESSIVE EXPRESS )
INSURANCE COMPANY; PROGRESSIVE )
SELECT INSURANCE COMPANY; and )
PROGRESSIVE ADVANCED INSURANCE )
COMPANY, )
                           )
       Petitioners, )
                           )
v. )      Case No. 2D17-4074
                           )
SHL ENTERPRISES, LLC, a/a/o SHAZAM )
AUTO GLASS, LLC, a/a/o STACEY )
SALAZAR; SHL ENTERPRISES, LLC, )
a/a/o SHAZAM AUTO GLASS, LLC, a/a/o )
CLEAVE SCOGGINS; GLASSMETICS, )
LLC, a/a/o MEGAN WAYLAND; )
GLASSMETICS, LLC, a/a/o JAMES )
WILLIAMS; GLASSMETICS, LLC, a/a/o )
STEVEN DERY; LLOYD'S OF SHELTON )
AUTO GLASS, LLC, a/a/o SHARON )
DWORSKY; GLASSMETICS, LLC, a/a/o )
BRIAN MONA; SHL ENTERPRISES, LLC, )
a/a/o SHAZAM AUTO GLASS, LLC, a/a/o )
MARYANN MANSUR; and SHL )
ENTERPRISES, LLC, a/a/o SHAZAM )
AUTO GLASS, LLC, a/a/o MICHELLE )
SIMS, )
                           )
       Respondents. )
_____ )

Opinion filed October 31, 2018.

Petition for Writ of Certiorari to the Circuit Court for the Thirteenth Judicial Circuit for Hillsborough County; sitting in its appellate capacity.

Alexandra Valdes of Cole, Scott & Kissane, P.A., Miami, for Petitioner.

Kristin A. Norse and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa; David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa; John C. Murrow of Law Office of John C. Murrow, P.A., Tampa; Anthony T. Prieto of Morgan & Morgan, P.A., Tampa; and Martin Macyszyn of Lucas Magazine, PLLC, New Port Richey, for Respondents.

MORRIS, Judge.

The petitioners, Progressive American Insurance Company, Progressive Express Insurance Company, Progressive Select Insurance Company, and Progressive Advanced Insurance Company (Progressive), seek a second-tier writ of certiorari to quash the circuit court's order that denied Progressive's petition for writ of certiorari below. Because we conclude that the circuit court departed from the essential requirements of the law by failing to analyze and interpret section 627.7288, Florida Statutes (2016), and because that error has resulted in a manifest injustice, we grant Progressive's petition and quash the order of the circuit court.[1]

## BACKGROUND

Below, Progressive insureds filed nine individual first-party claims under their insurance policies seeking payment for windshield repairs. The insureds assigned

---

[1]Travelling with this case, but not consolidated with it is Progressive Select Insurance Company v. Lloyd's of Shelton Auto Glass, LLC a/a/o Jedidiah Thomas, 2D17-3657, which raised identical issues and in which the circuit court entered an order that was the basis for the circuit court's order under review in this case.

their rights under their policies to the respective windshield replacement companies. These windshield replacement companies are the respondents before us: SHL Enterprises, LLC, a/a/o Shazam Auto Glass, LLC; Glassmetics, LLC; and Lloyd's of Shelton Auto Glass, LLC (windshield replacement companies). The windshield replacement companies submitted invoices to Progressive, and while Progressive initially issued payments to the windshield replacement companies, the payments did not cover the full amount of the replacements. The windshield replacement companies then filed breach of contract actions against Progressive in county court, arguing that the insurance policies at issue included Collision and Comprehensive Coverage that provided coverage for "sudden, direct, and accidental loss to a windshield on a covered vehicle that is not caused by a collision, without applying a deductible." However, the policies also included limitations on the coverage provided. Specifically, the policies indicated that liability was limited to "the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible." Another limiting provision provided in relevant part:

> Payments for loss to a covered auto . . . are subject to the following provisions:
>
> . . . .
>
> In determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by us:
>
> Will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment as reasonably determined by us.

The policies also included an appraisal provision that applied when disputes arose concerning the costs of repair:

> If we cannot agree with you on an amount of a loss, then we or you may demand an appraisal of the loss. Within thirty (30) days of any demand for an appraisal[,] each party shall appoint a competent and impartial appraiser and shall notify the other party of the appraiser's identity. The appraisers will determine the amount of loss.

Additionally, the appraisal provisions provided that if the appraisers could not agree on the amount of a loss, the issue would be submitted to a qualified and impartial umpire chosen by the appraisers. Finally, the appraisal provisions indicated that the amount of loss agreed to by the appraisers, or by one appraiser and the umpire, would be binding pursuant to the terms of the insurance policies.

After the windshield replacement companies filed suit, Progressive moved to compel appraisal and to stay discovery in each case. The windshield replacement companies then filed responses in opposition, arguing that the appraisal provisions in the policies were contrary to section 627.7288, which provides in relevant part that "[t]he deductible provisions of any policy of motor vehicle insurance . . . providing comprehensive coverage or combined additional coverage shall not be applicable to damage to the windshield of any motor vehicle covered under such policy." The windshield replacement companies argued that the enforcement of the appraisal provision in the context of a windshield claim would require the insured or, as in these cases, the insured's assignee to share in the cost of appraisal which would be the equivalent of applying a deductible in contravention of section 627.7288.

Progressive filed a reply, arguing that the appraisal provisions did not violate section 627.7288 because the appraisal costs were not the equivalent of a

deductible. Progressive explained that such costs arose, if at all, after Progressive made a payment under the policy and a dispute arose as to the amount whereas a deductible is a portion of the loss that each insured must pay before the insurer becomes liable for payment. Progressive also argued that the appraisal provisions had been freely contracted for and that the statute was not intended to be applied for the benefit of windshield replacement companies.

The county court conducted a hearing and entered an order concluding that the appraisal provisions were unenforceable because they required the insureds or their assignees to bear their own appraiser's costs which the county court determined was the equivalent of a deductible imposed in violation of section 627.7288.

Thereafter, Progressive filed petitions for writs of certiorari with the circuit court in each case. The circuit court determined that the issues and orders to be reviewed in each of the cases were substantively identical and sua sponte consolidated the cases. Progressive argued in the circuit court below that the county court's orders departed from the essential requirements of law because equating the costs of appraisal with a deductible conflicted with the plain meaning of the term "deductible" and because section 627.7288 was not intended to apply for the benefit of windshield replacement companies. Progressive also argued that by refusing to enforce the appraisal provisions, the county court impermissibly rewrote the subject insurance policies.

The circuit court denied Progressive's petitions, citing its prior ruling in Progressive Select Insurance Co. v. Lloyd's of Shelton Auto Glass, LLC, a/a/o Jedidiah Thomas, Case No. 17-CA-5640 (Fla. 13th Jud. Cir. July 28, 2017). In that opinion, the

circuit court noted that the county court's decision was based on its interpretation of section 627.7288. However, rather than conducting its own analysis of section 627.7288 to determine whether the county court departed from the essential requirements of the law, the circuit court explained that Progressive had failed to provide any "judicial authority from any district court of appeal determining whether" enforcement of appraisal provisions such as the provisions in the subject policies constituted a de facto violation of section 627.7288. As a result, the circuit court in Lloyd's of Shelton concluded that the county court's order did not depart from a clearly established principle of law. Accordingly, the petitions in the cases under review in this proceeding were denied on the same basis.

Progressive filed a motion for rehearing, arguing that the circuit court too narrowly interpreted what constitutes "clearly established law" and that the fact that Progressive had not cited to any appellate cases ruling on the issue did not mean that the county court's order did not depart from a clearly established principle of law. The circuit court denied the motion for rehearing, and this second-tier certiorari proceeding follows.

**ANALYSIS**

In this second-tier certiorari proceeding, we are limited to determining whether the circuit court, sitting in its appellate capacity, afforded procedural due process and applied the correct law. Ivey v. Allstate Ins. Co., 774 So. 2d 679, 682 (Fla. 2000); see also Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (equating analysis of whether circuit court applied the correct law to whether it departed from the essential requirements of law). Certiorari may only be granted "when

- 6 -

there has been a violation of [a] clearly established principle of law resulting in a miscarriage of justice." Ivey, 774 So. 2d at 682 (alteration in original) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 528 (Fla. 1995)).

" '[C]learly established law' can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law." Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003); see also State Farm Mut. Auto. Ins. Co. v. Edge Family Chiropractic, P.A., 41 So. 3d 293, 295 (Fla. 1st DCA 2010). "Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review." Kaklamanos, 843 So. 2d at 890.

The circuit court departed from a clearly established principle of law when it failed to conduct an analysis of and interpret section 627.7288, instead apparently concluding that without a citation to appellate case law that addresses the subject of the county court's ruling, Progressive was unable to establish that the county court departed from the essential requirements of the law. By improperly restricting the scope of its own certiorari review, the circuit court did not engage in a meaningful analysis of the county court's order and thus could not have concluded that there was no departure from the essential requirements of the law.

The circuit court's failure to adhere to clearly established principles of law (i.e., by analyzing and interpreting section 627.7288) results in a manifest injustice here because the county court erroneously construed the appraisal cost requirement as a deductible that violated section 627.7288. Section 627.7288 contains no express prohibition against requiring an insured to pay his or her own appraisal costs where

there is a dispute over windshield repair/replacement costs. Rather, section 627.7288 only prohibits requiring an insured to pay his or her deductible for a windshield damage claim.

"Deductible" is defined as "the portion of the loss to be borne by the insured <u>before</u> the insurer becomes liable for payment." *Deductible*, <u>Black's Law Dictionary</u> (10th ed. 2014) (emphasis added). Thus, if the insurance company accepts liability for a non-windshield-damage claim, it then forwards payment to the insured[2] after deducting the amount of the insured's deductible. But where an insured makes a windshield-damage claim, section 627.7288 clearly states that deductible provisions in insurance policies do not apply. In that scenario, if the insurance company accepts liability, it must forward payment for the windshield damages to the insured without deducting the amount of the insured's deductible. But the fact that the insured or its assignee ultimately challenges the amount of the payment and invokes the appraisal provision, thus necessitating the payment of a fee for an appraisal, does not convert the appraisal fee into a deductible applied in violation of section 627.7288. Appraisal fees are not imposed during the adjustment of every insurance claim. Rather, appraisal fees only become relevant after an insurer has accepted liability and made a payment and after a dispute has arisen about the amount of the payment. Thus the appraisal fee is not <u>a portion of the loss</u> that the insured must pay—which is the classic definition of a "deductible"—but it is instead a cost of doing business, i.e., a fee paid to a neutral third

_____

[2]We recognize that in some instances, the insurance company will issue payment to its insured, while in other situations, payment is made directly to the company performing repairs. We refer to payment being made to the insured simply for ease of reference.

party who is hired to help resolve a dispute about the amount of the total loss.  The insured still receives the benefit of not being required to pay his or her deductible, and no further financial obligation is incurred by the insured or the insured's assignee unless he or she voluntarily chooses to dispute the amount of payment made by the insurer. We note that the insurers in these cases also must pay this cost of doing business whenever an insured or the insured's assignee invokes the appraisal provision.

If appraisal fees were construed to be a form of a deductible and thus inapplicable to windshield damage claims, an insured or the insured's assignee could simply dispute any payout from an insurance company relating to such a claim and thereby shift the entire cost of appraisal—something which the insured or the insured's assignee can unilaterally demand under the policies—to the insurer.  No such interpretation is supported by the plain language of section 627.7288, and thus there is no reason to resort to rules of statutory construction to reach a different result.  See Hardee County v. FINR II, Inc., 221 So. 3d 1162, 1165 (Fla. 2017) (explaining that when statutory language is clear and unambiguous, statutory construction is unnecessary).[3]

_____

[3]Because we have concluded that the statutory language of section 627.7288 is clear, we do not need to look at the legislative history of the statute to determine whether the legislature intended for windshield replacement companies to be able to enforce the statute against insurers.  Cf. FINR II, Inc., 221 So. 3d at 1165 (explaining that "[l]egislative history can be helpful in construing a statute when its plain language is unclear").  However, we express doubt that in enacting section 627.7288, the legislature contemplated the scenario presented in these cases.  Staff reports from the Florida House of Representatives and Florida Senate suggest that the primary concern was eliminating the safety hazard posed by cracked windshields by placing the full cost of repair without a deductible on the insurance companies, thereby permitting insureds to have their windshields repaired quickly.  See Fla. H. Comm. on Ins., HB 357 (1979), Staff Report (final May 1, 1979) (acknowledging safety hazard posed by cracked windshields and that car owners frequently do not repair the crack due to deductibles); Fla. S. Comm. on Com., SB 354 (1979), Staff Analysis and Economic Impact Statement (final April 25, 1979) (acknowledging that cracked windshields pose safety hazard).  But

- 9 -

If the legislature intends for insurers to solely bear the costs of appraisal in windshield damage claims, it knows how to express that intention. But the statute as currently written only forbids the imposition of a deductible as applied to a windshield damage claim. It does not forbid a requirement for each party to bear its own appraisal costs in an insurance payment dispute. Thus where the contracting parties have freely contracted for such a requirement, such as in this case, they or their assignees may not rely on section 627.7288 to avoid their responsibility to pay such costs.

Because we conclude that the circuit court departed from the essential requirements of law by failing to properly analyze and interpret section 627.7288 and because that error results in a manifest injustice for the reasons we explained, we grant Progressive's second-tier certiorari petition and hereby quash the circuit court's order denying the petitions filed below.

Petition granted; order quashed.

SILBERMAN and VILLANTI, JJ., Concur.

---

in the cases such as the ones currently under review, the safety hazard has been eliminated as the damaged windshields have been repaired and the car owners have assigned their rights to payment to the windshield replacement companies. Thus the only remaining issue, i.e., whether an insured's assignee has to share in paying for the cost of appraisal to help resolve a dispute over the payment amount, has nothing to do with the safety concerns that resulted in the enactment of section 627.7288.