728 So.2d 297 (1999)
W.R. TOWNSEND CONTRACTING, INC., Appellant,
v.
JENSEN CIVIL CONSTRUCTION, INC., f/k/a Jensen Of Jacksonville, Inc., Appellee.
No. 98-1035.
District Court of Appeal of Florida, First District.
February 18, 1999.
Rehearing Denied March 26, 1999.
*299 P. Campbell Ford & David S. Wainer, III, of P. Campbell Ford & Associates, P.A., Jacksonville; and Diane H. Tutt, of Diane H. Tutt, P.A., Plantation, for Appellant.
Harry O. Thomas & F. Alan Cummings, of Cummings & Thomas, P.A., Tallahassee, for Appellee.
BROWNING, J.
W.R. Townsend Contracting, Inc. ("Appellant," "Plaintiff," or "Townsend Contracting") appeals an order dismissing with prejudice its sixth amended complaint against Jensen Civil Construction, Inc., f/k/a Jensen of Jacksonville, Inc. ("Appellee," "Defendant," or "Jensen Construction") for failure to state a cause of action.[1] Appellant contends that the order should be reversed because the allegations are legally and factually sufficient as to Counts I (breach of oral contract), II (promissory estoppel), III (quantum meruit), V (unjust enrichment), and VI (fraud in the inducement).[2] We affirm the order of dismissal as to Counts III and IV; reverse the order as to Counts I, II, V, and VI; and remand for a jury trial on the remaining counts.
In the general allegations of its sixth amended complaint, Townsend Contracting alleged the following:
1. This is a cause of action for damages in excess of $15,000.00 exclusive of costs, interest and attorneys' fees.
2. Plaintiff is a Florida corporation operating and doing business in Jacksonville, Duval County, Florida.
3. Defendant is a Florida corporation operating and doing business in Jacksonville, Duval County, Florida. Defendant, at all times material hereto, did business under the name, "Jensen of Jacksonville, Inc.," but changed its name to "Jensen Civil Construction, Inc.," effective April 1, 1996,
4. In January 1996, the Florida Department of Transportation ("FDOT") had a public bid for the extension of State Road 9A ("9A") from J. Turner Butler Boulevard to Baymeadows Road in Jacksonville, Florida ("the 9A project" or "the project"). The FDOT promulgated extensive plans and specifications for the project that were specific in quality and quantity thus allowing contractors to bid on the project.
5. Defendant intended to bid on the project.
6. A large portion of the project involved obtaining and placing suitable fill material.

*300 7. Although there are many sources for fill material in the Jacksonville metropolitan area[, t]he most cost effective sources for the purpose of bidding the project were the properties adjacent to the project site.
8. The property adjacent to the project is owned by four (4) different persons or entities ("the owners").
9. Prior to the bid, three (3) of the owners had exclusive contracts with Eighteen Construction ("Eighteen"). The fourth owner had an exclusive contract with Plaintiff.
10. The bidders had to have bids from Plaintiff and Eighteen in order to secure the lowest market price at the time of the bid for obtaining and placing fill material.
11. While it was common knowledge within the industry that Plaintiff would have a low bid, only one other contractor, Superior [Construction, Inc. ("Superior")], had actual knowledge of what the Plaintiffs bid price was and, in fact, Plaintiff and Superior had a contract with Plaintiff at the bid price for Plaintiff to obtain and place fill material on the project.
12. Seven (7) entities bid on the project. Two (2) of the seven, Defendant and Superior ..., had Plaintiff's bid. All of the bidders had Eighteen's bid.
13. The two bidders (Defendant and Superior) with Plaintiffs bid were the two lowest on the bid to the FDOT for the project. Plaintiff contracted with Superior and Defendant for a price that was lower than Eighteen's price. Defendant beat Superior by one thousand two hundred eighty-three ($1,283) dollars on a bid of almost twenty-one and a half million ($21,500,000) dollars. Almost one hundred fifty thousand ($150,000) dollars separated Superior from the third place bidder. A copy of the FDOT bid summary is attached hereto as Exhibit "A." The difference in price between Plaintiffs bid and Eighteen's bid was much greater than one hundred fifty thousand ($150,000) dollars.
"To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." Perry v. Cosgrove, 464 So.2d 664, 665 (Fla. 2d DCA 1985); Fla. R. Civ. P. 1.110(b) (requiring "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief"). In reviewing an order granting a motion to dismiss for failure to state a cause of action, we must accept as true all well-pled allegations in Appellant's sixth amended complaint, and we must draw all reasonable inferences in favor of the pleader. Response Oncology, Inc. v. Metrahealth Insurance Co., 978 F.Supp. 1052, 1058 (S.D.Fla.1997) (courts must liberally construe, and accept as true, factual allegations in complaint and reasonably deductible inferences therefrom, but need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party); Higgs v. Florida Department of Corrections, 647 So.2d 962 (Fla. 1st DCA 1994); Abruzzo v. Haller, 603 So.2d 1338 (Fla. 1st DCA 1992). Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, the ruling on a motion to dismiss for failure to state a cause of action is subject to de novo standard of review. Sarkis v. Pafford Oil Co., 697 So.2d 524 (Fla. 1st DCA 1997).

COUNT I
To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to "a certain and definite proposition" and left no essential terms open. Jacksonville Port Authority v. W.R. Johnson Enterprises, Inc., 624 So.2d 313 (Fla. 1st DCA 1993) (evidence did not establish existence of binding agreement between port authority and machinery contractor for installation of machinery even though parties initially agreed that contractor was to perform initial work as well as installation work on project, and even though contractor performed initial work; scope of work for installation phase was not presented until after parties established relationship, and changes continued to be made after then; moreover, no price was agreed on for work on installation phase, and correspondence between parties indicated negotiations were ongoing); Breakers of Fort Walton Beach Condominiums, Inc. v. Atlantic *301 Beach Management, Inc., 552 So.2d 274 (Fla. 1st DCA 1989); Industrial Medicine Publishing Co., Inc. v. Colonial Press of Miami, Inc., 181 So.2d 19, 20 (Fla. 3d DCA 1965) ("In contract actions, the complaint must allege the execution of the contract, the obligation thereby assumed, and the breach.").
In support of its claim in Count I, Appellant re-alleged Paragraphs 1 through 12 of the general allegations, supra, and alleged further 1) that Jensen Construction needed a contract with Appellant that included an agreement for Appellant to provide the necessary fill material for the road project, 2) that Appellant believed it was competitive in the overall bid and, with the lowest price for fill material, could win the bid; 3) that Jensen Construction contacted Appellant in an effort to convince Appellant to contract with it, 4) that Appellant told Jensen Construction that Appellant already had a contract with Superior and would not contract with Appellee, 5) that Jensen Construction again requested to contract with Appellant, 6) that subsequently Appellant relented and entered an oral contract with Appellee; 7) that under the terms of the oral agreement, Appellant agreed to provide and Appellee agreed to purchase the labor and materials at the prices listed on the F.D.O.T. bid sheet, plus the cost of Appellant's bond, at the quality and quantity specified by the F.D.O.T. for the project in its plans and specifications; 8) that the oral contract was contingent upon Appellant's having the lowest price at the time of the bid and Appellee's winning the bid, 9) that both contingencies under the agreement occurred[3], thereby effecting an enforceable contract, 10) that Jensen Construction breached the oral agreement by failing and refusing to allow Appellant to perform under the contract, 11) that Appellant was ready, willing, and able to perform the work under the agreement; and 12) that Appellant was damaged by losing the profits on the contract with Appellee. Attached to the sixth amended complaint (as Exhibit "B") is a copy of the bid sheet. The voluminous set of F.D.O.T. plans and specifications on which all contractors, including Jensen Construction, allegedly relied is attached (as Exhibit "C"). Both parties agree that no Florida case is on point regarding the facts alleged herein.
Thus, Townsend Contracting alleged that Jensen Construction orally agreed to purchase the labor and materials at the prices listed on the bid sheet (plus the bond cost), at the quality and quantity set out for the project by the F.D.O.T. in its plans and specifications. At oral argument, Appellant explained that its binding oral agreement with Appellee was for Appellant to give its bid price to Appellee and, if Appellee got the F.D.O.T. bid, then Appellee would use Appellant. The oral agreement specifically contemplated the parties' entering a written contract if the specifications were met. This is not a case in which a plaintiff merely submitted a subcontractor's potential price or bid to a contractor, in which instance Appellant acknowledges there would be neither a contract formed at that point nor any legal obligation on the part of the contractor to accept the subcontractor's bid. AROK Construction Co. v. Indian Construction Services, 174 Ariz. 291, 848 P.2d 870, 873 (App.1993) ("It is settled law that the bidding process alone does not create a contract."); Housing Authority of City of Fort Pierce v. Foster, 237 So.2d 569 (Fla. 4th DCA 1970); William A. Berbusse, Jr., Inc. v. North Broward Hospital District, 117 So.2d 550 (Fla. 2d DCA 1960).
We conclude that the allegations in Count I satisfy the threshold requirements of Jacksonville Port Authority, 624 So.2d at 315, which stands for the proposition that the courts will recognize a contract so long as no essential terms remain open for consideration and negotiation. See Electrical Construction & Maintenance Co., Inc. v. Maeda Pacific Corp., 764 F.2d 619 (9th Cir.1985) *302 (where subcontractor allegedly agreed to bid only after receiving general contractor's promise to accept bid if it were low bid and if general contractor were awarded prime contract, consideration for general contractor's promise that might obligate general contractor to award subcontract to subcontractor existed, consisting of subcontractor's submission of bid, an act bargained for that subcontractor was not under a legal duty to perform); Savoca Masonry Co., Inc. v. Homes and Son Construction Co., Inc., 112 Ariz. 392, 542 P.2d 817, 819 (1975) ("It is elementary that for an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained."). The fact that other, non-essential terms remained open is not fatal to Appellant's claim. Henry C. Beck Co. v. Arcrete, Inc., 515 S.W.2d 712, 716 (Tex.Civ. App.1974). "The rule that it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent agreement is well recognized." John I. Moss, Inc. v. Cobbs Co., Inc., 198 So.2d 872, 874 (Fla. 3d DCA 1967); Foster, 237 So.2d at 569 (jury question was presented as to whether negotiations between city housing authority and joint venturers regarding two housing projects and acceptance of bid were intended to have binding effect until formal contract was executed, where initial negotiations contained all material terms of contemplated written contract except for unit price to be used for purpose of adjusting contract price on account of extras or changes). Jensen Construction's subsequent refusal to enter a written contract with Townsend Contracting or to allow Appellant to perform under the agreement is alleged to be the breach.

COUNT II
To state a cause of action for promissory estoppel, a plaintiff must allege facts that, if taken as true, would show 1) that the plaintiff detrimentally relied on a promise made by the defendant, 2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person, and 3) that injustice can be avoided only by enforcement of the promise against the defendant. W.R. Grace & Co. v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla.1989) (alleged representation by mining company's employees that drilling company's services would be required for considerable period of time, statement to drilling company's president that mining company "thought" drilling company "probably" would be drilling options for 3-5 years, and statement that mining company would have worked for drilling company for 15-20 years were not sufficiently definite in time, term, or reasonableness to be enforceable under promissory estoppel principles).
In support of its claim in Count II, Townsend Contracting re-alleged Paragraphs 1 through 13 of the general allegations, supra, and alleged further 1) that Jensen Construction needed to contract with Appellant because Appellee had only one of the two available fill sources for the road project, 2) that Jensen Construction knew Townsend Contracting had a contract with Superior to provide fill material on the F.D.O.T. project in the event Superior won the bid, and knew that Townsend Contracting stood to lose the profits from its contract with Superior if Appellant assisted Appellee in winning the F.D.O.T. contract (thus causing Superior to lose the bid); 3) that Townsend Contracting had refused to reveal its contract price to Jensen Construction, or to allow Appellee to rely on or use Appellant's contract price in the bid to the F.D.O.T. until Appellee promised Appellant that Appellant was the fill subcontractor on the road project, contingent upon Appellee's winning the bid; 4) that this promise was identical to the promise made by Superior to Appellant to get a contract with Appellant, 5) that subsequently, the contingency occurred and Jensen Construction was awarded the bid; 6) that Townsend Contracting reasonably relied on and acted on Jensen Construction's promise, to Appellant's detriment, when Appellant agreed to contract with Appellee and thereby allowed Appellee to use and rely upon Appellant's guaranteed bid in calculating Appellee's bid to the F.D.O.T., and Appellant's guaranteed bid was the lowest on the market when it was provided to Appellee and when the bid *303 was made; 7) that after contracting with Townsend Contracting and using Appellant's guaranteed price to win the F.D.O.T. contract, Jensen Construction defaulted on its promise by not allowing Appellant to perform the work on which it had bid; 8) that Jensen Construction further denied that Townsend Contracting was a subcontractor on the project, and Appellee asserted the Statute of Frauds alleging that any contract could not be enforced; 9) that the enforcement of Jensen Construction's promise is necessary to prevent injustice in that but for Appellee's promise, Appellee never would have gotten Appellant's guaranteed bid and would not have won the bid with the F.D.O.T.; 10) that Townsend Contracting had substantially lower prices than Eighteen, the only other economically viable source of fill material; 11) that if Jensen Construction had used Eighteen for fill material, then Appellee would have lost the bid and Superior would have won; 12) that Appellant has no adequate remedy at law because Appellee has asserted the Statute of Frauds on the contract claim, 13) and that Townsend Contracting has been damaged as a result of Jensen Construction's actions by loss of profits on the contract that Appellee promised to give Appellant, or, alternatively, 14) that Appellant has been damaged as a result of Appellee's actions by loss of profits on the contract Appellant had with Superior if Appellant had not acted on Appellee's promise.
Thus, the detrimental reliance alleged is that if Townsend Contracting had not been induced to give its contract price to Jensen Construction by the latter's promises, then the other contractor with which Appellant had a contract (Superior) would have secured the F.D.O.T. job (as the second lowest bidder), and Appellant would have been awarded the fill subcontract. Appellant notes that the fill prices reflected in Appellee's bid to the F.D.O.T. do not necessarily reflect the actual bid received from Appellant. Jensen Construction was free to submit to the F.D.O.T. whatever numbers for fill material it wanted to use. Therefore, the attachments to the complaint (which are not incorporated into Count II) are not determinative of whether Appellant's guaranteed bid to Appellee was the lowest on the market.
From our review of the pertinent allegations, we conclude that Appellant stated a cause of action for promissory estoppel. AROK Construction, 848 P.2d at 878 ("If AROK can show that it acted or detrimentally relied upon ICS's promise to award the contract, then promissory estoppel is available.").

COUNT V
To state a cause of action for unjust enrichment, a plaintiff must allege facts that, if taken as true, would show 1) that a benefit was conferred upon the defendant, 2) that the defendant either requested the benefit or knowingly and voluntarily accepted it, 3) that a benefit flowed to the defendant, and 4) that under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. Turner v. Fitzsimmons, 673 So.2d 532, 536 (Fla. 1st DCA 1996); Gomes v. Stevens, 548 So.2d 1163 (Fla. 2d DCA 1989). Appellant pled for recovery on this theory as an inconsistent alternative pleading.
After re-alleging Paragraphs 1 through 13 of its general allegations, supra, Appellant alleged further 1) that Jensen Construction needed a guaranteed bid from Townsend Contracting that included an agreement to provide the necessary fill material for the road project so that Appellee could bid the F.D.O.T. project with the lowest available market price, 2) that Appellee asked Appellant to provide this guaranteed bid, which was the lowest price on the market; 3) that Appellee received the benefit of Appellant's guaranteed bid because of Appellee's use of that bid, which made Appellee the low bidder on the project; 4) that Appellee's acceptance and retention of the benefit of Appellant's guaranteed bid, coupled with Appellee's ability to depend upon the lowest price on the market for fill material, without compensating Appellant for the value of that guaranteed bid, leads to an inequitable result for Appellant; 5) that as the successful bidder, Jensen Construction secured the F.D.O.T. contract for over $21 million and gave Townsend Contracting nothing in return; 6) that Jensen Construction *304 subsequently denied the agreement with Townsend Contracting and refused to allow Appellant to perform the agreed-on work and to pay Appellant, 7) that Townsend Contracting lost its contract with Superior as a result of giving its bid to Jensen Construction; 8) that if Appellant had not provided its guaranteed bid price to Appellee, and if Appellee had used the next lowest bid for fill material (Eighteen's bid), then Appellee would not have had the lowest bid and would not have won the F.D.O.T. contract; and 9) that Appellant has no adequate remedy at law because Appellee has asserted the Statute of Frauds on the contract claim.
Thus, Jensen Construction's request was for Townsend Contracting to provide a guaranteed bid, as a result of which benefit Appellee was the low bidder on the road project. Appellee's winning the F.D.O.T. contract for more than $21 million, while paying nothing to Appellant in return, would lead to an inequitable result. Accordingly, Appellant has stated a cause of action for unjust enrichment.

COUNT VI
To state a cause of action for fraud in the inducement, a plaintiff must allege facts that, if taken as true, would show 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation induce another to act on it, and 4) reliance on the representation to the injury of the other party. Mettler, Inc. v. Ellen Tracy, Inc., 648 So.2d 253, 255 (Fla. 2d DCA 1994); C & J Sapp Publishing Co. v. Tandy Corp., 585 So.2d 290 (Fla. 2d DCA 1991).
In support of this claim, Appellant re-alleged Paragraphs 1 through 13 of the general allegations, supra, and alleged further 1) that Jensen Construction needed a contract with Townsend Contracting that included an agreement to provide the necessary fill material for the road project, 2) that to get Appellant to submit its guaranteed bid, Appellee represented to Appellant that it had a contract with Appellee upon the occurrence of two contingencies, on the happening of which Appellant would perform the work on the project at the agreed-upon prices; 3) that Appellee intended for Appellant to act on Appellee's representations by giving Appellee its guaranteed bid, obligating Appellant to provide fill material at what was the lowest price on the market, to consider and use in Appellee's bid to the F.D.O.T.; 4) that at the time of these representations, Jensen Construction knew that Townsend Contracting had contracted with Superior to obtain and provide fill material at the same agreed-upon price, with the contingencies that Appellant have the lowest price on the market at the time of the bid and that Superior win the F.D.O.T. bid; 5) that when it made these representations to Townsend Contracting, Jensen Construction had no intention of acknowledging the agreement later and using Appellant as a subcontractor on the project if the contingencies occurred; 6) that the contingencies occurred, 7) that Townsend Contracting reasonably relied on Jensen Construction's representation, to Appellant's detriment, when Appellant submitted its guaranteed bid to Appellee, thereby allowing Appellee to submit a successful bid to the F.D.O.T.; 8) that Appellee subsequently refused to allow Appellant to perform the bid-upon work, denied the existence of the agreement, and asserted the Statute of Frauds as a defense to the contract claim; 9) that if Jensen Construction had not been able to use and depend upon Townsend Contracting's guaranteed bid price to obtain and use fill material (which was the lowest price on the market), then Appellee would have lost the F.D.O.T. bid; 10) that Eighteen had the next lowest and only other economically viable price, and Eighteen's bid was significantly higher than Townsend Contracting's guaranteed bid; and 11) that as a direct and proximate result of Jensen Construction's fraudulent misrepresentations, Townsend Contracting has been damaged by losing its contract with Superior, which would have won the bid if Appellee had not won the bid by using Appellant's guaranteed bid; or, alternatively, 12) that Appellant lost the profit from the contract that Appellee refused to acknowledge and refused to allow Appellant to perform.
*305 We conclude that the Count VI allegations state a cause of action for fraud in the inducement. In summary, the trial court reversibly erred in dismissing with prejudice Counts I, II, V, and VI.

COUNT III
The Fifth District Court has described quantum meruit as
the legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services from another under circumstances where in the normal course of common affairs a reasonable person receiving such benefit would ordinarily expect to pay for it.
Osteen v. Morris, 481 So.2d 1287, 1289-90 (Fla. 5th DCA 1986); Moncrief v. Hall, 63 So.2d 640, 642 (Fla.1953) (en banc); Interior Design Concepts, Inc. v. Curtin, 473 So.2d 1374 (Fla. 1st DCA 1985) (as basis for recovery under doctrine of quantum meruit, plaintiff was required to show that services were performed); Miller v. Bill Rivers Trailers, Inc., 450 So.2d 334 (Fla. 1st DCA 1984). To satisfy the elements of quantum meruit, a plaintiff must allege facts that, taken as true, show that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it. Id.
Offering this claim as an inconsistent alternative pleading in the event Appellee successfully asserted the Statute of Frauds as a defense to the contract claim, Appellant re-alleged Paragraphs 1 through 12 of its general allegations, supra, and alleged further 1) that Jensen Construction needed a contract with Townsend Contracting that included an agreement to provide necessary fill material for the road project, 2) that Appellee believed it was competitive in the overall bid and could win the bid with the lowest price for fill material, 3) that Appellee contacted Appellant to convince the latter to contract with Appellee, but that Appellant responded that it already had contracted with Superior and would not contract with Appellee, 4) that Appellee again contacted Appellant and requested it to contract with Appellee, 5) that Appellant guaranteed a price to Appellee for obtaining and placing fill material, and this price was the lowest available by a substantial amount; 6) that as these guaranteed prices were provided under a contract claimed by Appellee to be unenforceable and violative of the Statute of Frauds, Appellant lacks an adequate remedy at law; 7) that Jensen Construction expected to compensate Townsend Contracting, and the latter expected compensation from Appellee, in return for the furnishing of the guaranteed bid, including the guaranteed price for obtaining and placing fill material that was the lowest price on the market; 8) that Appellant's guaranteed bid was a substantial, direct benefit to Appellee, in that without its use, Appellee would not have been the low bidder to the F.D.O.T., for Appellant's prices for "the goods and services" were substantially lower than the next closest bidder's; 9) that if Jensen Construction had used Eighteen's bid, which included the only other available fill material, then Appellee would have lost the bid; 10) that Appellee failed to provide compensation for the guaranteed bid provided by Appellant; 11) that Appellant has exhausted all available remedies; and 12) that Appellant has suffered damages as a result of Appellee's failure to compensate it.
The law should place a tougher burden on a plaintiff who relies on an implied contract than it does on one "who uses reasonable care and foresight in protecting himself by means of an express contract." Hermanowski v. Naranja Lakes Condominium No. Five, Inc., 421 So.2d 558, 560 (Fla. 3d DCA 1982); Bromer v. Florida Power & Light Co., 45 So.2d 658 (Fla.1949). Jensen Construction challenged this implied contract claim on the ground that Townsend Contracting had not specifically pled the provision or delivery of any "goods and services" to Appellee. The trial court accepted Appellee's argument. When invited at oral argument to support its claim to the contrary, Appellant was unable to cite any authority to back up its contention that it had provided goods or services to Appellee. Appellee correctly *306 distinguishes the facts in Monopoly Realty, Inc. v. World Business Brokers, Inc., 562 So.2d 387 (Fla. 3d DCA 1990) (where experienced real-estate brokers signed written co-brokerage agreement for sale of commercial real estate and, as consideration for agreement, appellee provided appellant with information that property was for sale, trial court properly found that contract was enforceable where appellee had performed its obligation under terms of particular agreement). Therefore, we conclude that Count III was properly dismissed with prejudice.
We AFFIRM the dismissal order in part, REVERSE in part, and REMAND for a jury trial on Counts I, II, V, and VI only.
BOOTH and ALLEN, JJ., CONCUR.
NOTES
[1] Both parties in the instant lawsuit are privately owned corporations.
[2] Appellant does not challenge the dismissal with prejudice of Count IV (negligent misrepresentation).
[3] In the parties' dispute over whether Townsend Contracting fulfilled one of the contingencies by having the lowest prices at the time of the bid, Appellant noted at oral argument that the appropriate focus for comparison among Appellant and the other companies who bid on the road project is the total of the 65 items bid. Jensen Construction incorrectly chose to interpret the complaint to mean that each one of the 65 item prices quoted by Appellant had to be the lowest price bid.